# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## HARRISON DIVISION

**BRUCE A. LEVINE**                                                    **PLAINTIFF**

**V.**                          **CASE NO. 3:16-CV-3101**

**CITY OF EUREKA SPRINGS, ARKANSAS;**
**EUREKA SPRINGS PARKS AND**
**RECREATION COMMISSION; ROBERT**
**"BUTCH" BERRY, individually and in his**
**representative capacity as Mayor of**
**Eureka Springs; and WILLIAM F. "BILL"**
**FEATHERSTONE, individually and in his**
**representative capacity as Chairman of**
**Parks & Recreation Commission**                          **DEFENDANTS**

## <u>MEMORANDUM OPINION AND ORDER</u>

Currently before the Court are the Motion for Summary Judgment (Doc. 26), Brief in Support (Doc. 27), and Statement of Undisputed Facts (Doc. 28) filed by Defendants City of Eureka Springs, Arkansas ("the City"), Eureka Springs Parks and Recreation Commission ("the Commission"), Robert "Butch" Berry, and William F. "Bill" Featherstone; the Response in opposition (Doc. 34) and Response to Defendants' Statement of Undisputed Facts and Separate Statement of Undisputed Facts (Doc. 31) filed by Plaintiff Bruce A. Levine; the Defendants' Reply in support of their Motion (Doc. 35); and Mr. Levine's Sur-reply (Doc. 39). Furthermore, although the Court previously granted Mr. Levine's Motion for Leave to file the aforementioned Sur-reply, *see* Doc. 40, the Court has also considered the Defendants' Response to Motion for Leave to File Sur-reply (Doc. 37) in the context of its deliberations on their Motion for Summary Judgment, as this

document contains substantive arguments in opposition to arguments contained in Mr. Levine's Sur-reply.

For the reasons given below, the Defendants' Motion for Summary Judgment is **GRANTED**. Mr. Levine's federal claims will be **DISMISSED WITH PREJUDICE**, and his state-law claims will be **DISMISSED WITHOUT PREJUDICE**.

## I. BACKGROUND

On June 9, 2015, Mr. Levine was fired from his job as the Director of the Eureka Springs Parks and Recreation Commission—a position he held for twelve years. On September 28, 2016, he filed this lawsuit against the City, the Commission, Mr. Berry (the Mayor of the City), and Mr. Featherstone (the Chairman of the Commission).[1] In his Complaint (Doc. 1), Mr. Levine alleges that his firing was unlawful. Specifically, Mr. Levine brings claims under Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, the Due Process Clause of the Fourteenth Amendment to the United States Constitution through 42 U.S.C. § 1983, as well as various causes of action under Arkansas law.[2] The Defendants have moved for summary judgment on all of Mr. Levine's claims. That Motion is now ripe for decision.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[1] Mr. Levine's Complaint also named other defendants, but he subsequently dismissed his claims against them. *See* Text Only Order dated December 13, 2016.

[2] Mr. Levine's Complaint also brought a claim under the Age Discrimination in Employment Act ("ADEA"), but he has since abandoned that claim. *See* Doc. 34-1, p. 1 ("However, after reviewing the law, Plaintiff hereby concedes that he does not have an Age Discrimination Case."). Accordingly, his ADEA claim will be dismissed with prejudice.

of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the non-moving party, and give the non-moving party the benefit of any logical inferences that can be drawn from the facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997). The moving party bears the burden of proving the absence of any material factual disputes and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

If the moving party meets this burden, then the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. These facts must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986)).

## III. DISCUSSION

The Court will begin its summary-judgment analysis with Mr. Levine's claims under the ADA and the Rehabilitation Act, which are premised on his allegation that his firing was a form of unlawful disability discrimination. Then the Court will consider Mr. Levine's claims under the Due Process Clause of the Fourteenth Amendment. Finally, the Court will turn to Mr. Levine's claims under Arkansas law.

## A. Disability Discrimination

The ADA and the Rehabilitation Act both prohibit workplace discrimination on the basis of one's disability. *See* 42 U.S.C. § 12112(a); 29 U.S.C. § 794. For our purposes in this case, the legal test under these two different statutes is identical.[3] *See Wojewski v. Rapid City Regional Hosp., Inc.*, 450 F.3d 338, 344 (8th Cir. 2006). To establish a claim of workplace disability discrimination under the ADA (and accordingly, also under the Rehabilitation Act), "an employee must show that [he] (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of [his] disability." *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013).

A plaintiff's claim of disability discrimination may survive a summary judgment motion through the presentation of either direct or inferential evidence in support of his claim. *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1034 (8th Cir. 2007). "[D]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Id.*

---

[3] The Eighth Circuit has recognized that an "important difference between the two acts is that the Rehabilitation Act 'imposes a requirement that a person's disability serve as the *sole* impetus for a defendant's adverse action against the plaintiff.'" *Wojewski v. Rapid City Regional Hosp., Inc.*, 450 F.3d 338, 344 (8th Cir. 2006) (emphasis in original). This is different from how the Eighth Circuit historically interpreted the ADA, under which a plaintiff merely needed to show that his disability was "a 'motivating factor' in the employer's decision." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1002 (8th Cir. 2012). However, the Eighth Circuit has more recently expressed "doubts" about its "motivating factor" ADA precedent, and indicated that the ADA might instead require a plaintiff to show that his disability was a "but for" cause of the employer's action against him. *See id.* As will become clear below, the muddled state of the law on this point is purely academic in Mr. Levine's case, because he has not presented evidence that his disability played *any* causal role in his firing.

(quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). However, when a disability discrimination claim is premised merely on inferential evidence, then the Court must apply a burden-shifting test known as the "*McDonnell Douglas*" standard. *Id.* This standard, which takes its name from the famous case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), requires application of a three-step process. First, the plaintiff "bears the burden of establishing a prima facie case of discrimination." *Libel*, 482 F.3d at 1034. If the plaintiff meets that burden, then the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employer's actions." *Id.* Finally, if the defendant's burden is met, then the burden shifts back to the plaintiff to show that the defendant's justification is pretextual. *Id.*

Mr. Levine's Complaint alleges that he was diagnosed with Bipolar Disorder ("BPD") in 2004, *see* Doc. 1, ¶¶ 5–8, and that he contracted a tick-borne disease called Rocky Mountain Spotted Fever ("RMSF") roughly two months before he was fired, which may have contributed to a major bipolar episode, *see id.* at ¶¶ 13–14. He further alleges that when he was fired, he was never told any specific reason for the firing; and from this, he surmises that he must have been fired because of his BPD and/or RMSF. *See id.* at ¶¶ 17–18, 20, 26–28, 30, 34, 39.

In their summary judgment motion, the Defendants contend that Mr. Levine has no direct evidence to support his allegation that he was fired because of a disability, and that he cannot even provide enough evidence to make a prima facie case for this allegation. Instead, they introduce evidence that they fired him because they believed he failed to report or repair a broken chlorinator within his purview and instead instructed an employee to falsify the corresponding water records, *see* Doc. 26-1, p. 5; Doc. 26-4, p. 1;

Doc. 26-5, pp. 2–3, 13; Doc. 26-7, p. 2, and because they believed he made, and permitted an employee to make, disparaging remarks about another employee's race and sexual orientation without ever disciplining the offending employee, *see* 26-3, pp. 16–25, 31–35; Doc. 26-5, pp. 4, 11; Doc. 26-6, pp. 2–3; Doc. 26-7, p. 2.

In response, Mr. Levine offers evidence that when the Defendants fired him, they knew that he suffered from BPD. *See* Doc. 34-11, ¶ 5. But he does not offer any evidence to support his allegation that he was fired *because of* his disability. This is not enough to survive summary judgment. At the summary judgment stage, a plaintiff must establish a prima facie case as to every element of his claim. *See Kellogg v. Union Pac. R.R. Co.*, 233 F.3d 1083, 1086 (8th Cir. 2000) ("If Kellogg fails to establish any element of his prima facie [ADA] case, summary judgment is proper."). This means that, among other things, Mr. Levine must provide some evidence of a causal link between his disability and the adverse action that was taken against him. *Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 460 (8th Cir. 2010); *Lowery v. Hazelwood Sch. Dist.*, 244 F.3d 654, 657–58 (8th Cir. 2001). But there is no evidence anywhere in the record that the Defendants' knowledge of Mr. Levine's disability had anything at all to do with his firing.

In other words, Mr. Levine has failed to make a prima facie case for his claims under the ADA and the Rehabilitation Act. Therefore, the Defendants are entitled to summary judgment on these claims, which will be dismissed with prejudice.

### B. Due Process

The Court turns now to Mr. Levine's claims under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S.

Const. amend. XIV, § 1. "This clause has two components: the procedural due process and the substantive due process components." *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999).

Mr. Levine does not appear to be claiming that his firing implicates his right to *substantive* due process—and for good reason, as "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). This is because substantive due process is concerned with the protection of "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *See Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal citations and quotation marks omitted). As the Eighth Circuit has observed: "There is no suggestion that a right to continued employment with a particular governmental employer has anything resembling the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and family life. To the contrary, the Supreme Court has suggested that a public employee's interest in continued employment with a governmental employer is not so fundamental as to be protected by substantive due process." *Singleton*, 176 F.3d at 425–26 (internal quotation marks removed) (citing *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 195–99 (1979)).

As for the *procedural* component of the Due Process Clause—such claims "require a two-step analysis. Initially, a plaintiff must demonstrate that the state deprived him of some life, liberty, or property interest. If successful, the plaintiff must then establish that the state deprived him of that interest without sufficient process." *Krentz v. Robertson*,

228 F.3d 897, 902 (8th Cir. 2000). Obviously, Mr. Levine does not claim he has been deprived of his life. But he does claim that his firing and the circumstances around it "deprived him of his property interest in his job," and of his "liberty interest in his reputation and good name in the community." *See* Doc. 1, ¶ 31. Below, the Court will first consider Mr. Levine's alleged property interest. Then, the Court will take up his alleged liberty interest.

### 1. Property Interest in Continued Employment

"A person must have a legitimate claim of entitlement to his or her employment to have a property interest in it." *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "Whether the employee had a legitimate claim of entitlement—and thus, a constitutionally protected property interest—depends on state law and the terms of his employment." *Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011); *see also Bishop v. Wood*, 426 U.S. 341, 344 (1976). "In Arkansas, an employer may fire an employee for good cause, bad cause, or no reason at all under the employment-at-will doctrine." *Magic Touch Corp. v. Hicks*, 99 Ark. App. 334, 335 (2007).

Arkansas's at-will doctrine may be modified with respect to a particular employer and employee, but only through certain limited ways. One such way is through a specific contractual agreement to that effect—for example, that the employment is for a specific period of time, or that a firing may be only for cause. *See Crain Indus., Inc. v. Cass*, 305 Ark. 566, 570–71 (1991). Similarly, such modification may occur through a provision in a pertinent employee manual or handbook, stating that firing shall be only for cause. *See id.* The Defendants contend that Mr. Levine was an ordinary at-will employee, and that

no such modification of the at-will doctrine ever occurred here. Mr. Levine appears to concede as much,[4] *see* Doc. 31, pp. 5–6,[5] but regardless, he has not presented any evidence of a contractual provision, employee handbook, city ordinance, state law, or other authority that would have required cause for the termination of his employment relationship.[6] Since there is no evidence that Mr. Levine had a legitimate claim of entitlement under Arkansas law to his continued employment, there is no basis for concluding that he had any constitutionally protected interest in it. *See Mulvenon*, 643 F.3d at 659. Therefore, his Due Process claim fails with respect to his alleged property deprivation.

## 2. Liberty Interest in Reputation

As noted above, Mr. Levine also claims that he has been deprived of his "liberty interest in his reputation and good name in the community." *See* Doc. 1, ¶ 31. "An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Winegar*, 20 F.3d at 899. To show a deprivation of this liberty interest, a plaintiff "must demonstrate: (1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public; . . .

---

[4] The parties seem to dispute whether Mr. Levine was an employee of the City or the Commission. *Compare* Doc. 28, ¶ 4, *with* Doc. 31, p. 6. However, this dispute is immaterial because regardless of who Mr. Levine's formal employer was, the record lacks any evidence that Mr. Levine's employment relationship required cause for termination.

[5] *But see* Doc. 39, p. 10.

[6] Mr. Levine does provide evidence that cause is required to fire a *Commissioner. See* Doc. 34-14, pp. 2–3. But this is irrelevant, because Mr. Levine was not a Commissioner.

(4) an alteration or extinguishment of a right or legal status;" and (5) the employee "requested and was denied a name-clearing hearing." *Crooks v. Lynch*, 557 F.3d 846, 849 (8th Cir. 2009).

The Defendants challenge Mr. Levine's ability to satisfy the third of these five elements.[7] In support of this argument, the Defendants have introduced evidence that the decision to fire Mr. Levine was made during proceedings that were closed to the public, *see* Doc. 26-5, p. 13, that the Defendants declined to give any explanation to the public for Mr. Levine's firing during the open session that immediately followed the closed session, *see* Doc. 26-1, p. 29, that the Defendants never told the public why Mr. Levine was fired, *see* Doc. 26-7, p. 2, and that in a subsequent public meeting, Mr. Featherstone asked the public not to gossip about the matter, *see* Doc. 26-1, p. 34. The only evidence that Mr. Levine has placed in the record in response to this challenge, is an "Unsworn Declaration" by an individual named Chuck Schmidt, who claims that he was told by a former mayor named Dani Joy that she was told by Mr. Berry (the current mayor and one of the Defendants in this case) that Mr. Levine "was fired for something the City could get sued for." *See* Doc. 34-3, ¶ 9. To the extent that this Declaration is being offered to prove that any of the Defendants publicized a defamatory remark about Mr. Levine, it is inadmissible hearsay. *See* Fed. R. Evid. 802. This is because *Mr. Schmidt* is offering a statement that was made by *Ms. Joy* in order to prove the truth of the matter *asserted in Ms. Joy's statement* to him—namely, that she was told a particular thing by Mr. Berry. *See* Fed. R. Evid. 801(c)(1)–(2). "When an affidavit contains an out-of-court statement

---

[7] The Defendants also argue that Mr. Levine cannot satisfy the first element. But there is no need to reach this argument, since the Court finds below that Mr. Levine cannot satisfy the third element.

offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005).

Other than Mr. Schmidt's hearsay, Mr. Levine merely offers indirect speculation that the Defendants might have publicized their reasons for firing him, either during the investigation of the allegations against him that preceded his firing, or perhaps to unknown private members of the public after he was fired. *See* Doc. 34-1, p. 7. But "[s]peculation and conjecture are insufficient to defeat summary judgment." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 794 (8th Cir. 2012). Since there is no admissible evidence in the record that the Defendants publicized a defamatory statement about Mr. Levine, his Due Process claim fails with respect to his alleged liberty deprivation.

To recap, then, Mr. Levine has not presented specific factual evidence from which a jury could reasonably find that he was deprived of his life, liberty, or property without sufficient process. *See Krentz*, 228 F.3d at 902 (8th Cir. 2000). In other words, a jury could not reasonably find that his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution were violated.[8] Therefore, the Defendants are entitled to summary judgment on his Due Process claims, which will be dismissed with prejudice.

## C. Claims under Arkansas Law

---

[8] A corollary to this finding is that Mr. Berry and Mr. Featherstone are each entitled to qualified immunity from Mr. Levine's claims against them in their individual capacities. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("Qualified immunity is applicable unless the official's conduct *violated* a clearly established constitutional right." (emphasis added)).

All of Mr. Levine's remaining claims are brought under Arkansas law. Because the Court has dismissed all of Mr. Levine's claims over which it has original federal-question jurisdiction, the Court declines to exercise supplemental jurisdiction over Mr. Levine's state-law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, Mr. Levine's claims under Arkansas law will be dismissed without prejudice. *See Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464–465 (8th Cir. 2004).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment (Doc. 26) filed by Defendants City of Eureka Springs, Arkansas, Eureka Springs Parks and Recreation Commission, Robert "Butch" Berry, and William F. "Bill" Featherstone is **GRANTED**. Plaintiff Bruce A. Levine's claims under 42 U.S.C. § 1983, the Americans with Disabilities Act, the Rehabilitation Act, and the Age Discrimination in Employment Act are all **DISMISSED WITH PREJUDICE**, and his other claims are all **DISMISSED WITHOUT PREJUDICE**. As there are no remaining claims pending before this Court, judgment will be entered contemporaneously with this Order.

**IT IS SO ORDERED** on this 29th day of December, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE